McMORAN & O'CONNOR
A Professional Corporation
Cantone Office Center
766 Shrewsbury Avenue
Tinton Falls, New Jersey 07724
  (732) 758-8181
Attorneys for Plaintiff,
  Charles Arentowicz

CHARLES ARENTOWICZ

        Plaintiff,

        vs.

CAP GEMINI ERNST & YOUNG U.S.
LLC

        Defendant.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MORRIS COUNTY

Docket No.

        Civil Action

        COMPLAINT

**EXHIBIT**

_Claimant #17_
_D.v. 12/20/05_

CHARLES ARENTOWICZ, residing at 605 Heritage Road, Millington, New Jersey, by way of Complaint against CAP GEMINI ERNST & YOUNG U.S. LLC, says:

## THE PARTIES

1.  Plaintiff, Charles Arentowicz ("Arentowicz"), is a citizen and resident of New Jersey and at all times relevant to this action, was employed by Cap Gemini Ernst & Young U.S. LLC as a Vice President in its Clark, New Jersey office.

2.  Defendant Cap Gemini Ernst & Young U.S. LLC ("Cap Gemini") is a limited liability company engaged in the business of providing consulting, technology and outsourcing services. It does business throughout the United States and the world, and has offices located in New Jersey.

-1-

## BACKGROUND

3.  Arentowicz is a fifty-four (54) year old individual.

4.  Arentowicz began his employment with Cap Gemini's predecessor in interest, Ernst & Young, in 1977 (Arthur Young & Company).

5.  Arentowicz' performance was consistently superior at Ernst & Young.

6.  Arentowicz received regular salary increases and bonuses and was promoted into a series of progressively more responsible positions, among those being a promotion from senior consultant to partner of the firm in 1987.

7.  In 1989, after the merger of Arthur Young & Company with Ernst & Whinney to form Ernst & Young, Mr. Arentowicz was the Partner in the Northeast Region Management Consulting Group responsible for Information Systems Strategic Planning and Assessments across all industries.

8.  Arentowicz was one of three (3) founding members in 1994 of Ernst & Young's Life Sciences Consulting Practice.

9.  By 2000, Arentowicz was a Partner and member of the Life Sciences Leadership team serving in dual roles as the practice leader for the J.D. Edwards service line and account executive for Merck & Co., Inc. ("Merck).

10. In 2000, following Cap Gemini's acquisition of Ernst & Young's Management Consulting Practice, Arentowicz became a Vice

President responsible for Life Sciences account management as well as the J.D. Edwards service line.

11. Among his many accomplishments, Arentowicz single handedly secured Merck as a client for Cap Gemini after a five (5) year absence.

12. Through his client executive relationships at Merck, Arentowicz developed Merck into one of the most profitable accounts in Life Sciences, with a two (2) year profit percentage for 2000/2001 of 33.4%, the highest in Life Sciences.

13. Arentowicz was one of the most profitable engagement directors in the Life Sciences practice with over $8 million in net revenue managed at a profit of over 27% for 2000/2001.

14. This ranked Arentowicz among the top five (5) out of thirty six (36) Life Sciences directors in 2000/2001.

15. Arentowicz' accomplishments are reflected in his annual performance reviews.

16. Arentowicz received overall performance ratings of "3" and "4" (Exceeds Expectations) for 2000 and 2001 respectively.

17. On April 12, 2002, Arentowicz received a $5,000 discretionary bonus award in special recognition for his outstanding achievements.

18. Arentowicz' accomplishments were noted in a personal note from Terrence R. Ozan, then Chief Executive Officer of the Americas, Cap Gemini.

## EMPLOYMENT AGREEMENT

19. Following Cap Gemini's acquisition of Ernst & Young's Management Consulting Practice in 2000, Cap Gemini instructed Arentowicz that he needed to execute a written contract of employment with Cap Gemini if he wished to remain employed.

20. On or about April 22, 2000, Arentowicz entered into a written contract of employment with Cap Gemini (hereinafter "the Agreement").

21. Arentowicz had worked for Ernst & Young and its predecessors for twenty and a half (20.5) years before Cap Gemini directed him to sign the Agreement.

22. Arentowicz had accrued significant employee benefits that he would have forfeited if he did not continue his employment with Cap Gemini by signing the Agreement.

23. A true and accurate copy of the Agreement is attached hereto as Exhibit A and incorporated herein by reference.

24. Paragraph 5 of the Agreement states, *inter alia*, that any dispute, controversy or claim between Arentowicz and Cap Gemini arising out of or relating to or concerning the provisions of the Agreement or arising out of Arentowicz' employment with Cap Gemini "shall be finally settled by arbitration in the City of New York before, and in accordance with the arbitration procedures set forth in the attached Annex

4, and the commercial arbitration rules then obtaining of the American Arbitration Association (the "AAA")."

25. Annex 4 of the Agreement states that "[t]he arbitrators have no power [to] . . . (B) award punitive damages (except such punitive damages as may be provided for by statute and which may not be waived by agreement) or any damages not measured by the prevailing party's actual damages and the parties therefore waive their right to any such damages . . ."

26. Annex 4 to the Agreement limits the remedies Arentowicz is entitled to under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(a), et. seq.

27. Pursuant to the current commercial arbitration rules of the American Arbitration Association, Arentowicz would be required to pay in excess of Eight Thousand Dollars ($8,000) as an initial filing fee merely to file a claim against Cap Gemini arising out of his employment.

28. Arentowicz would also be required to pay the arbitrators' fees for a panel of three (3) arbitrators as well any additional expenses the American Arbitration Association deemed necessary to cover the expense of the arbitration.

## REDUCTION IN FORCE

29. On December 11, 2002, without any prior warning, Cap Gemini selected Arentowicz for termination in an alleged reduction in force.

30. Cap Gemini chose Arentowicz to be terminated in the reduction in force because of his age.

31. Pursuant to the Age Report Arentowicz received with his Separation Package, of the nineteen (19) Vice-Presidents Cap Gemini selected for termination in the reduction in force through December 2002, eighteen (18) of them were age forty (40) or older.

32. Of the sixty-eight (68) total Vice-Presidents Cap Gemini selected for termination through February 2003, based upon a revised Age Report Cap Gemini distributed on February 21, 2003, sixty-five (65) Vice-Presidents were age forty (40) or older.

33. Cap Gemini's Age Reports show that it was targeting older employees for termination in the reduction in force.

34. When Arentowicz confronted his Supervisor, David Wilson, about why he had been selected for termination in the reduction in force, Wilson stated that it was not performance related.

35. Arentowicz' position was not eliminated. He was replaced by Douglas Helmink ("Helmink"), who is approximately

nine (9) years younger and has limited experience in Life Sciences.

36. Helmink, who is now responsible for the Merck account, one of the most profitable in Life Sciences, has no prior relationship with Merck.

37. The Chairman and Chief Executive of Cap Gemini, International, Paul Hermelin ("Hermelin"), stated in an internal memorandum on January 18, 2002 that the company wanted to "empower" a younger generation of executives to run key operational units.

38. Hermelin publicly confirmed the company's intention to hire younger executives in a *Wall Street Journal* article dated June 27, 2002, in which he stated that Cap Gemini wanted to "shuffle" management to bring in a younger generation of executives.

39. Consistent with Cap Gemini's desire to retain younger employees, Joseph Coppola (Coppola"), a Life Science Vice President, was terminated by Cap Gemini in a reduction in force on January 17, 2003. He was rehired two (2) months later on March 17, 2003.

40. Coppola is fifteen (15) years younger and has roughly twenty-two (22) years less experience with the company than Arentowicz.

41. Contrary to Cap Gemini's alleged policy of reducing its workforce in 2002, Cap Gemini hired twenty-three (23) new Vice-Presidents in 2002 including Helmink and Coppola, both of whom were substantially younger than Arentowicz.

42. Many of the newly hired Vice-Presidents have significantly less years of consulting experience than Arentowicz and are also significantly younger than Arentowicz.

### DAMAGES

43. Arentowicz has been unable to find comparable employment since his termination, despite a diligent comprehensive job search.

44. Arentowicz has suffered substantial economic losses.

45. Arentowicz has suffered severe emotional distress.

### COUNT ONE

46. Arentowicz repeats the allegations of paragraphs 1 through 45 as if set forth at length herein.

47. A controversy exists between the parties concerning the validity and enforceability of Paragraph 5 of the Agreement as follows:

(a) Cap Gemini contends that the Paragraph 5 of the Agreement, which compels Arentowicz to submit any claim against Cap Gemini arising out his employment to arbitration in the City of New York in accordance with the arbitration procedures set

forth in Annex 4, and the commercial arbitration rules of the American Arbitration Association, is valid and enforceable.

(b) Arentowicz contends that Paragraph 5 of the Agreement is unconscionable and is not valid or enforceable.

48. By reason of the foregoing, a declaratory judgment is both necessary and proper under N.J.S.A. 2A:16-50, et. seq., in order to set forth and determine the rights, obligations and liabilities that exist among the parties to the Agreement.

WHEREFORE, Arentowicz respectfully requests that the Court enter judgment declaring that Paragraph 5 of the Agreement is unconscionable and is not valid or enforceable and awarding such other relief as the Court deems equitable and just.

## COUNT TWO

49. Arentowicz repeats the allegations of paragraphs 1 through 48 as if set forth at length herein.

50. Cap Gemini discriminated against Arentowicz because of his age in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(a).

51. Arentowicz has suffered damages and will continue to suffer damages as a result of Cap Gemini's unlawful discrimination against him.

WHEREFORE, Arentowicz demands judgment against Cap Gemini for back pay, front pay, compensatory damages for pain and

suffering, attorneys' fees, punitive damages, costs and such other relief as the Court deems equitable and just.

McMORAN & O'CONNOR
A Professional Corporation
766 Shrewsbury Avenue
Tinton Falls, New Jersey 07724
Attorneys for Plaintiff

By: _____
     BRUCE P. McMORAN

Dated: Oct. 24, 2003

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues.

McMORAN & O'CONNOR
A Professional Corporation
Cantone Office Center
766 Shrewsbury Avenue
Tinton Falls, New Jersey 07724
Attorneys for Plaintiff

By: _____
BRUCE P. McMORAN

Dated: Oct. 24, 2003

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Bruce P. McMoran as trial counsel.

McMORAN & O'CONNOR
A Professional Corporation
Cantone Office Center
766 Shrewsbury Avenue
Tinton Falls, New Jersey 07724
Attorneys for Plaintiff

By: _____
    BRUCE P. McMORAN

Dated: Oct. 24, 2003

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy in the within action is not pending in any other court, or any pending arbitration proceeding, nor is any such court proceeding or arbitration proceeding presently contemplated. There are no other persons who should be joined at this time.

McMORAN & O'CONNOR
A Professional Corporation
Cantone Office Center
766 Shrewsbury Avenue
Tinton Falls, New Jersey 07724
Attorneys for Plaintiff

By: _____
BRUCE P. McMORAN

Dated: *Oct. 24, 2003*

-13-