UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                           :

CHARLES ARENTOWICZ,          :     07 Civ. 6092 (LAP)
                           :

             Petitioner,   :

                           :

           v.           :

                           :

CAP GEMINI ERNST & YOUNG, U.S., LLC,  :

                           :

             Respondent.   :
------------------------------------------------------------ x

CAPGEMINI'S MEMORANDUM OF LAW IN
OPPOSITION TO ARENTOWICZ'S MOTION TO VACATE
THE ARBITRATION AWARD AND IN SUPPORT OF
CAPGEMINI'S CROSS-MOTION TO CONFIRM THE AWARD

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166
(212) 294-6700 (T)
(212) 294-4700 (F)

TABLE OF CONTENTS

Page No.

Preliminary Statement ............................................................................................... 1

Summary Of The Arbitration Proceeding And The Award ....................................... 4

    A.    Well-Respected Arbitrators Are Appointed And The Parties Conduct
          Substantial Depositions And Discovery. ...................................................... 4

    B.    Summary Of The Award ............................................................................... 5

Argument ................................................................................................................... 8

POINT I   THE "MANIFEST DISREGARD OF THE
           LAW" STANDARD ITS EXCEPTIONALLY HIGH ............................... 8

POINT II  THE ARBITRATORS DID NOT MANIFESTLY
           DISREGARD THE LAW BUT RATHER CAREFULLY APPLIED IT ................ 10

    A.    The Arbitrators Applied McDonnell Douglas. .................................................. 10

    B.    The Panel Properly Found That Capgemini Stated A Legitimate,
          Nondiscriminatory Reason For Its Employment Decision. ................................ 13

        1.    Capgemini Provided Evidence Of A Legitimate, Nondiscriminatory Reason
            For Termination. ............................................................................... 15

        2.    Arentowicz Was Not And Cannot Claim He Was Deprived Of Pipeline
            Documents. ..................................................................................... 17

Conclusion ................................................................................................................ 20

Respondent Capgemini U.S. LLC, formerly known as Cap Gemini Ernst & Young U.S. LLC ("Capgemini"), hereby submits this memorandum of law in opposition to the motion to vacate the arbitration award of Petitioner Charles Arentowicz ("Petitioner" or "Arentowicz"), and in support of Capgemini's cross-motion, pursuant to Federal Arbitration Act ("FAA") § 9 (9 U.S.C. § 9) to confirm the award.   The Final Award (the "Award") of the arbitration panel (the "Panel") was rendered on or about April 4, 2007 in the proceeding (the "Arbitration") before the American Arbitration Association ("AAA") (the Award, with Dissenting Opinion, is annexed to the Silver Affidavit as Ex. A).[1]

<u>Preliminary Statement</u>

Arentowicz seeks to set aside the Award (in which the Panel found that Arentowicz failed to prove that Capgemini terminated his employment because of his age) on one and only one purported basis -- that it was allegedly rendered in "manifest disregard of the law". In particular, Arentowicz argues that the Panel ignored or refused to follow step two of the well-known burden-shifting methodology set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) ("<u>McDonnell Douglas</u>"). In particular, Arentowicz argues that, after he satisfied step one of the <u>McDonnell Douglas</u> analysis by producing a <u>prima facie</u> case, the Panel allegedly failed to require Capgemini to produce evidence of a legitimate, nondiscriminatory reason for Capgemini's decision to terminate Arentowicz's employment.

---

[1]    "Silver Aff." or "Silver Affidavit" refers to the affidavit of Gerald D. Silver, Esq. sworn to on September 25, 2007 and submitted herewith.   "Tr." refers to the Hearing Transcripts, copies of which are annexed as Ex. C to the Certification of Bruce P. McMoran, Esq. ("McMoran Cert.") dated September 10, 2007 and submitted by Arentowicz in support of his motion to vacate the Award. "CG Ex." and "R. Ex." refer to the Capgemini Exhibits and Arentowicz Exhibits, respectively, used in the Arbitration, which Arentowicz submitted to this Court with his motion papers. "Arentowicz Brief" or "Arentowicz Br." refers to Petitioner's Memorandum of Law in Support of Motion to Vacate Arbitration Award, dated September 10, 2007.

As set forth more fully below, the burden for demonstrating manifest disregard of the law is "exceptionally high". It is a doctrine of "last resort" that is reserved only for the most "egregious" instances. If any plausible reading of the Award indicates that the Panel applied the law, the Award must be sustained. Significantly, whether or not the Panel made a correct decision is irrelevant to this determination. Rather, the party challenging the Award on this basis must show that the arbitrators ignored or refused to apply well-established law. (See Point I, infra).

Arentowicz does not even come close to meeting his "heavy burden". A plain reading of the Award -- and the case law cited therein -- make clear that the Panel applied the McDonnell Douglas analysis and found that Capgemini produced evidence of a legitimate, non-discriminatory reason for its employment decision that is sufficient as a matter of law -- an economically motivated reduction-in-force, or "RIF" (see Award p. 2). Even the Dissenting Opinion states: "Both parties have met their burden of production", i.e., steps one and two of the McDonnell Douglas analysis (see Award, at Dissenting Opinion p. 1).

Indeed, as more fully set forth below, the Panel found that David Wilson ("Wilson"), the decisionmaker and the former Head of Arentowicz's Life Sciences Technology Consulting group at Capgemini ("Life Sciences"), credibly testified about the RIF at the Hearing. The Panel found that Wilson credibly testified that Capgemini was in a financial crisis in late 2002 during the aftermath of the burst of the "technology bubble" and the drop in technology spending after 9/11, losing hundreds of millions of dollars per year and in a fight for survival. The Panel further found that Wilson credibly testified that senior management at Capgemini advised Wilson that he needed to terminate four vice presidents in Life Sciences in order to cut costs to help keep the company afloat. The Panel found that Wilson's testimony on the criteria

was clear -- if Wilson did not believe that the vice president would be bringing in significant revenue in the next few months (i.e., the first few months of 2003), and did not believe that the vice president's skills or expertise were needed to complete an ongoing project for a client, that person should be a candidate for the reduction in force. The Panel found that Wilson credibly testified that, based on his analysis of Life Sciences, its engagements and clients, his review of relevant documents, discussions with other vice presidents and discussions with Arentowicz himself, he did not believe that Arentowicz would be bringing in significant revenue in the upcoming few months or that Arentowicz was needed on any project. Hence, Wilson selected Arentowicz as part of the reduction in force.

This testimony, in and of itself, is sufficient as a matter of law to satisfy Capgemini's burden of producing evidence of a legitimate, non-discriminatory reason for its employment decision under the McDonnell Douglas burden-shifting analysis. Indeed, throughout the Arbitration, Arentowicz never contended that Capgemini failed to satisfy its burden, but rather proceeded directly to step three of the McDonnell Douglas analysis by attempting to prove that Capgemini's stated reason was a pretext.

It is readily apparent from Arentowicz's fifty page brief that what he is really attempting to do here is re-try step three, i.e., show that Capgemini's stated reason was a sham and that age was a motivating factor in the employment decision. As demonstrated by the well-reasoned Award, however, it is apparent that the Panel made the correct decision. In addition to the evidence of the RIF discussed above, which also included, inter alia, financial statements showing that Capgemini was on its way to losing $360 million in 2002 (CG Ex. 2) and was terminating thousands of employees (CG Exs. 3, 11, 33), Capgemini submitted other evidence as well. For example, Wilson, who at the time of testimony was Pastor of his Church, credibly

3

testified that age played no factor whatsoever in his decision.  Indeed, Wilson was 58 at the time of Arentowicz's termination, four years older than Arentowicz, and, as he testified, for him to discriminate on the basis of age he would essentially be discriminating against himself.  (Tr. 469).  Further, Wilson retained vice presidents who were ages 59, 58, 54, 52, and 50, and one of the four vice presidents terminated in the RIF was 39 (CG Ex. 23).   Further, and contrary to Arentowicz's contentions otherwise, both parties produced evidence demonstrating that the Merck account (Arentowicz's primary source of revenue over the years) had "dried up", and that any current work for Merck was sold and being performed by others (CG Exs. 13, 14, 23; Tr. 209-10, 225, 279-80).

Nevertheless, regardless of whether one agrees with the Award, or Wilson's decision to select Arentowicz for the reduction in force, it is clear that the Panel did not manifestly disregard the law.  Accordingly, Arentowicz's motion should be denied and the Award should be confirmed.

<u>Summary Of The Arbitration Proceeding And The Award</u>

A.    <u>Well-Respected Arbitrators Are Appointed And The Parties Conduct Substantial Depositions And Discovery</u>.

Pursuant to the agreement of the parties and AAA rules, the parties each selected an arbitrator who together would choose the third arbitrator.  Capgemini selected Alfred G. Felieu, Esq.  Arentowicz selected Lewis L. Maltby, Esq.  The two selected arbitrators chose Rosemary Townley, Esq.

Both Arbitrators Felieu and Townley (the majority of the Panel who issued the Award), are extremely well-respected, qualified and experienced in employment law matters. Arbitrator Felieu clerked for Judge Gershon, was a partner at Paul, Hastings for approximately ten years, and has been a partner in Vandenberg & Felieu, LLP for nearly ten years, where 100%

4

of his practice is devoted to employment law matters, representing employers and individuals. He has been a member of AAA Panels since 1996 (see Felieu CV (McMoran Cert. at Ex. K)).

Arbitrator Townley has been employed in a variety of labor and employment positions and has been an arbitrator on such matters since 1986. She was chair of the Labor and Employment Section, New York State Bar Association, in 1999-2000. She has extensive experience conducting employment arbitrations (see Townley CV (McMoran Cert at Ex. J)). As Arentowicz's selected arbitrator, Arbitrator Maltby (who issued the Dissenting Opinion), along with Arbitrator Felieu, selected Arbitrator Townley, her qualifications cannot be legitimately question by Arentowicz. In fact, they are not; Arentowicz concedes that Arbitrators Felieu and Townley are "seasoned employment arbitrators" with "extensive experience in the employment law" (Arentowicz Br. 29).

In the Arbitration, the parties each produced thousands of pages of documents. Arentowicz deposed Wilson, Laurie-Jadick Geiger (Capgemini's Head of Human Resources ("HR")) and Amy-Kane Stanley ("Kane-Stanley"), the HR representative assigned to Life Sciences. Capgemini deposed Arentowicz. At the Hearing, each party introduced approximately fifty exhibits. Arentowicz introduced testimony from Arentowicz, Wilson, former Capgemini vice presidents Joseph LeMaire and Mary-Ann Gallivan, Arentowicz's wife, and two experts; Capgemini introduced testimony from Wilson, Jadick-Geiger and Kane-Stanley.

B.    Summary Of The Award.

For purposes of brevity, the Award is only briefly summarized herein, and Capgemini respectfully refers the Court to the Award in its entirety for its thorough and well-reasoned analysis (Silver Aff. Ex. A).

In the Award, the Panel stated that Arentowicz alleged that he was selected for a layoff because of his age, 54. The Panel stated that "Arentowicz bears the burden of

5

demonstrating that age actually played a **determinative** role in the decision to terminate his employment" (Award p. 2 (emphasis in original).  Arentowicz does not contest that this is a correct statement of applicable law.

In the Award, the Panel stated that its findings and rulings were based on the testimony and documentary evidence submitted at the Hearing on December 4, 5 and 6, 2006, the Pre-Hearing and Post-Hearing Briefs, a full review of the record in the case, and applicable case law (Award p. 1).   In the Award, the Panel states, in reliance on Marione v. Metropolitan Life Insurance Co., 188 Fed. Appx. 141, 145 (3d Cir. 2006) (which cites McDonnell Douglas), that "a party asserting a claim of age discrimination in a reduction-in-force ('RIF') setting must offer sufficient probative evidence to allow a fact-finder to reasonably infer that the employer's stated reasons are not worthy of belief and are a 'post hoc fabrication' or otherwise did not actually motivate the challenged decision" (Award p. 2 (emphasis added)).  The Panel therefore implicitly found that Arentowicz stated a prima facie case (step one of McDonnell Douglas), that Capgemini stated a legitimate non-discriminatory reason for the termination, i.e., a RIF (step two of McDonnell Douglas), and then moved on to the third, final and most significant step in the McDonnell Douglas analysis -- Arentowicz's burden of proving pretext.

Indeed, the Panel states that there was little debate that Arentowicz was terminated as part of a reduction in force.  The Panel found:

> The parties do not dispute that Cap Gemini's financial crisis was real; the RIF was business related; the company was entitled to set the ground rules for the RIF; and elimination of four vice president positions in the Life Sciences Department was warranted.  The RIF decisions were based on management's assessments of which vice presidents would raise substantial revenue over a short time frame, i.e., the impending three to four months.  Wilson explained that Cap Gemini was in 'survival mode' and retained vice presidents who could deliver 'revenue now' or 'who were in the position to sell revenue and deliver it immediately, now'.  Wilson tentatively selected the four vice presidents to be laid off.  Upper

6

management and Wilson's management's team voiced no objections to the inclusion of Arentowicz in this group.

(Award pp. 2-3).

The Panel "found Wilson's testimony to be credible and not evidence of pretext", and in contrast "found Arentowicz's testimony to be less than forthright at times" (Award p. 3). Further, the Panel found that Arentowicz failed to provide "specific and convincing evidence on the key question at hand, the likelihood that he personally would produce or sell immediate revenue in the months following the RIF, which severely undercut his case". The Panel noted that, although Arentowicz retained possession and produced many documents pertaining to historical and projected revenue from his primary client, Merck, none of those documents contradicted or undercut Wilson's testimony that he did not believe Arentowicz would be bringing in significant revenue in the next few months, or that Arentowicz himself was needed to complete existing projects. (Award pp. 3-4).

In particular, the Panel found that the Merck projections upon which Arentowicz relied were not probative, as they were "unsubstantiated projections, which he [Arentowicz] himself helped prepare and which were never adopted by Capgemini", and did not, in any event suggest any "immediate revenue" that would be coming in over the "first few months of the year" (Award p. 4). To the contrary, the Panel found and discussed in great detail substantial evidence "supporting [Wilson's] view that not all was well with the Merck account in late 2002" and that "the revenues coming in were generated by others working on the account" (Award pp. 4-5), and "focused mostly on projects for Merck from 2002 that were expected to continue into 2003 for which his [Arentowicz's] continued presence did not appear to be required" (Award p. 4). The Panel further analyzed and rejected the remainder of Arentowicz's arguments as well. (Award pp. 5-7).

NY:1135050.3

The Panel correctly found that Arentowicz "did not bear his burden of demonstrating that age was a determinative factor in the decision made by David Wilson, who was 58 years old in December 2002, to include Arentowicz in the RIF" (Award p. 2). The Panel correctly found that "[i]n reaching this conclusion, we find significant that the age of the other three vice presidents released in the Life Sciences Department were 57, 49, and 39 and evidence no pattern of age animus", citing Marione for the proposition that an age claim should be dismissed where employees of all ages were terminated in the RIF and employees of all ages were retained, as well as the case Spencer v. Hudson Trader Investment Services, 2006 WL 1644859, *5 (D.N.J., June 6, 2006) for the proposition that an age claim is undercut when a younger employee is terminated as well (Award p. 2).

Argument

POINT I

THE "MANIFEST DISREGARD OF THE
LAW" STANDARD ITS EXCEPTIONALLY HIGH

As set forth in the Hoeft and Acciardo cases cited by Arentowicz himself, "[j]udicial review of an arbitration award for manifest disregard of the law is severely limited". Hoeft v. MVL Group, Inc., 343 F.3d 57, 69 (2d Cir. 2003) ("Hoeft") (internal quotation omitted); J. Acciardo v. Millennium Securities Corp., 83 F. Supp. 2d 413, 417 1995 (S.D.N.Y. 2000) ("Acciardo") (same). The party challenging the award "bears the heavy burden of proving that the arbitrator manifestly disregarded the law". Hoeft, 343 F. 3d at 69; Acciardo, 83 F. Supp. 2d at 417 ("the showing required of that party in order to avoid summary affirmance of the award is high").

"Manifest disregard clearly means more than error or misunderstanding with respect to the law, and we are not at liberty to set aside an arbitrator's award because of an

arguable difference regarding the meaning or applicability of laws urged upon him".  <u>Hoeft</u>, 343 F.3d at 69 (internal quotations and citations omitted).  "In addition, the Court is not empowered to second-guess the arbitrators' fact-finding or assessment of credibility."  <u>Acciardo</u>, 83 F. Supp. 2d at 417.

Thus, "in order to vacate an arbitration award on the basis of manifest disregard of a governing legal principle, the party must show that the arbitrators <u>refused</u> to apply it or <u>ignored</u> it altogether".  <u>Hoeft</u>, 343 F. 3d at 69 (emphasis added).  The "showing" required is "exceptionally high [and] '[t]he Second Circuit has held that any plausible reading of an award that fits within the law will sustain it'."  <u>In the Matter of Arbitration Between Halcot Navigation Partnership and Stolt-Nielsen Transportation Group</u>, 491 F. Supp. 2d 413, 421 (S.D.N.Y. 2007) ("<u>Halcot Navigation</u>").

As set forth by this Court:

> The Court of Appeals warns the reviewing court to 'proceed with caution,' because if there is 'even a barely colorable justification for the outcome reached,' confirmation of the award is required.  This applies even if the grounds for the arbitrators' decision are 'based on an error of fact or an error of law.'

<u>Briamonte v. Liberty Brokerage, Inc.</u>, 2000 WL 351399 (S.D.N.Y. March 31, 2000) ("<u>Briamonte</u>") (quoting <u>Matter of Andros Compania Maritima, S.A. of Kassavos</u>, 579 F. 2d 691, 704 (2d Cir. 1978)) (internal citations omitted) (Preska, J.); <u>Consolidated Rail Corporation v. Metropolitan Transportation Authority</u>, 1996 WL 137587, *19 (S.D.N.Y. March 22, 1996) (Preska, J.) ("<u>Consolidated Rail</u>") (the "'manifest disregard' standard is extremely high", and "an award will not be disturbed if even a 'barely colorable' justification is evident").  "The Court of Appeals has instructed that this [manifest disregard of the law] is a doctrine of last resort -- its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA applies".  <u>Coastal</u>

9

Caisson Corp. v. E.E. Cruz/NAB/Frontier-Kemper, 2007 WL 2285936, *4 (S.D.N.Y. August 10, 2007) (quoting Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004)).

Moreover, "where an arbitration award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome." Duferco International Steel Trading v. T. Klaveness Shipping A/S, 333 F. 3d 383, 390 (2nd Cir. 2003). This is true even if one of the arbitrators rendered a dissenting opinion. As this Court stated in Consolidated Rail:

> The parties have had a full and fair, indeed exhaustive, proceeding before a highly qualified panel. Presented with difficult issues that were well-argued on both sides, the arbitrators rendered a decision -- although one could disagree with it on the merits, see Dissenting Opinion by William T. Coleman, Jr., former Secretary of Transportation -- based on a thoroughly developed record.

Consolidated Rail, 1996 WL 137587 at * 20. This Court then found that "[i]t does not appear that the panel refused to apply or simply ignored any clearly applicable, governing legal principle". Id. As there was "sufficient support in the record to justify the conclusions" this Court confirmed that award. Id.

## POINT II

### THE ARBITRATORS DID NOT MANIFESTLY DISREGARD THE LAW BUT RATHER CAREFULLY APPLIED IT

A.    The Arbitrators Applied McDonnell Douglas.

The fact that the Panel did not specifically mention the McDonnell Douglas case does not mean that it did not apply the burden-shifting analysis set forth therein. To the contrary, the Panel cites to more recent cases which cite to and rely on McDonnell Douglas, as well as the other case heavily relied upon by Arentowicz, Texas Department of Committee Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981) ("Burdine") (see Award at p. 2 (citing Marione v. Metropolitan Life Insurance Co., 188 Fed. Appx. 141, 145 (3d Circuit 2006) ("Marione") and

10

<u>Spencer v. Hudson Trader Investment Services</u>, 2006 WL 1644859 (D.N.J. June 6, 2006)

("<u>Spencer</u>")).

      In the <u>Marione</u> case cited by the Panel, the court applied <u>McDonnell Douglas</u> and

<u>Burdine</u> in a RIF circumstance quite similar to that in the present case.  The court stated:

> When analyzing employment discrimination allegations arising under [the] ADEA, we follow the burden-shifting framework set forth by the Supreme Court in <u>McDonnell Douglas</u>.  First, a plaintiff must establish a <u>prima facie</u> case of discrimination.  <u>McDonnell Douglas</u>, 41 U.S. at 802, 93 S. Ct. 1817.  The District Court determined, and the record supports, that <u>Marione</u> did establish a <u>prima facie</u> case.  Therefore, this element has been satisfied and is not at issue on appeal.
>
> Establishment of a <u>prima facie</u> case creates a presumption of discriminatory intent that a defendant has the burden to rebut by setting forth some legitimate, nondiscriminatory reason for its actions.  <u>Id.</u>  Here, MetLife claims that the RIF was made necessary by cutbacks in the DAD Unit's budget. . . .  A MetLife manager testified that after learning of the budget cutbacks, she and the other managers engaged in a 'lifeboat' exercise, assessing which individuals were most needed in order to accomplish the DAD Unit's goals for 2002.
>
> We recognize that in a RIF, a company is often forced to terminate 'the worst of the best,' and therefore an adequate employee who is underperforming relative to his peers may still be chosen for termination.  <u>Tomasso</u>, 445 F.3d at 71 n. 9.  We therefore find MetLife's stated reasons, which need only to be articulated, and need not be proven at this stage, to be legitimate.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993).  <u>See also</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981) ('The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . [t]he explanation provided must be legally sufficient to justify a judgment for the defendant.').
>
> After a defendant has stated legitimate, nondiscriminatory reasons for its actions, plaintiff must then be afforded a fair opportunity to show that defendant's reasons are in fact pretextual.  <u>McDonnell Douglas</u>, 411 U.S. at 804, 93 S. Ct. 1817.

<u>Marione</u>, 188 Fed. Appx. at 143-44.

      Similarly, the Court in the <u>Spencer</u> case cited by the Panel applied <u>McDonnell</u>

<u>Douglas</u> and its progeny:

> If the plaintiff can establish a <u>prima</u> <u>facie</u> case, the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for plaintiff's termination. <u>McDonnell Douglas</u>, 411 U.S. at 802. The defendant 'satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.' <u>Fuentes</u>, 32 F.3d at 763. . . .
>
> Once the defendant satisfies its 'relatively light burden,' the burden shifts back to the plaintiff who must then show that the defendant's proffered reason or reasons are a pretext for discrimination. <u>Id.</u>

There is no requirement that the Panel cite directly back to <u>McDonnell Douglas</u>. Indeed, many courts, including this one, have applied the <u>McDonnell Douglas</u> burden-shifting analysis without specifically mentioning the case. <u>See</u>, <u>e.g.</u>, <u>Shih v. The City of New York</u>, 2006 WL 2789986, *7 (S.D.N.Y. September 26, 2006) (Preska, J.), <u>Briamonte</u>, 2000 WL 351399 at *4 (Preska, J.); <u>Guider v. F.W. Woolworth Corporation</u>, 1998 WL 702275, *7 (S.D.N.Y. October 7, 1998) (Preska, J.), <u>Castro v. Local 1199</u>, 964 F. Supp. 719, 726.

Here, as evidenced by the Award itself, the Panel applied <u>McDonnell Douglas</u> by finding that Capgemini's stated reason for the termination was a RIF, and that the next step was for Arentowicz to attempt to demonstrate that this stated reason is not genuine and that age was the motivating factor in Arentowicz's employment termination. The Panel stated that "a party asserting a claim of age discrimination <u>in</u> <u>a</u> <u>reduction-in-force</u> ("<u>RIF</u>") <u>setting</u> must offer sufficient probative evidence to allow a fact-finder to reasonably infer that <u>the</u> <u>employer's</u> <u>stated</u> <u>reasons</u> are not worthy of belief" (Award p. 2 (emphasis added)). At the very least, given the undisputed wealth of employment law experience on the Panel, a "plausible reading" of the Award is that the Panel applied <u>McDonnell Douglas</u>, and therefore Arentowicz does not meet the "exceptionally high" standard of proving manifest disregard for the law. <u>See</u>, <u>e.g.</u>, <u>Halcot Navigation</u>, 491 F. Supp. 2d at 421; <u>see</u> <u>generally</u> Point I, <u>supra</u>.

NY:1135050.3

Indeed, in Arentowicz's Post-Hearing Brief, Arentowicz applied the same exact analysis. As a review of that brief demonstrates, Arentowicz assumed that Capgemini satisfied step two of the <u>McDonnell Douglas</u> analysis by setting forth a legitimate, nondiscriminatory reason for its employment decision, <u>i.e.</u>, a RIF, and then moved straight to step three by attempting to prove pretext (<u>see</u>, <u>e.g.</u>, Arentowicz Br. (McMoran Ex. D at p. 69).

B.    <u>The Panel Properly Found That Capgemini Stated A Legitimate, Nondiscriminatory Reason For Its Employment Decision</u>.

The Supreme Court in the <u>Burdine</u> case heavily relied upon by Arentowicz describes what the defendant must do to satisfy its burden, after plaintiff succeeds in proving a <u>prima facie</u> case, "to articulate some legitimate nondiscriminatory reason for the employee's rejection." <u>Burdine</u>, 450 U.S. at 253, 101 S. Ct. at 1093 (<u>quoting</u> <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S. Ct. at 1824). "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Burdine</u>, 450 U.S. at 253, 101 S. Ct. at 1093.

In particular, a defendant satisfies its burden by simply "producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons." <u>Burdine</u>, 450 U.S. at 254, 101 S. Ct. at 1094. "It is sufficient that defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." <u>Burdine</u>, 450 U.S. 244-255, 101 S. Ct. at 1094. Significantly, "the employer's burden is satisfied if he simply 'explains what he has done' or produces evidence of nondiscriminatory reasons." <u>Burdine</u>, 450 U.S. at 256, 101 S. Ct. at 1095. "[T]he defendant

bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." Burdine, 450 U.S. at 260, 101 S. Ct. at 1097.

As set forth in the Johnson case relied upon by Arentowicz, "[t]he defendant's burden of articulating a legitimate, non-discriminatory reason for its action under the McDonnell Douglas mode of analysis is a relatively light one.  The defendant need only articulate any legitimate reason for the [adverse employment action]; the defendant need not prove the articulated reason actually motivated the [action]." Johnson v. Women's Christian Alliance, 76 F. Supp. 2d 582, 585 (E.D. Pa 1999) ("Johnson") (internal quotations and citations omitted) (emphasis added).  Indeed, "[t]he defendant satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Spencer, 2006 WL 1644859, at *3.  "The determination [of when defendant has met its burden] is for the court, and it involves no assessment of credibility." Johnson, 76 F. Supp.2d at 586 (citations omitted).

The Johnson case relied upon by Arentowicz sets forth several examples of a defendant articulating a RIF as a legitimate, non-discriminatory reason for its action, which include that (i) "the defendant employer terminated the plaintiff as part of a reduction-in-force plan, claiming the reduction-in-force resulted from budgetary constraints"; and (ii) "the defendant asserted that it eliminated plaintiff's position because of a university-wide effort to cut spending and a related budget decrease." See, e.g., Johnson, 76 F. Supp.2d at 586 (citations omitted).[2]

---

[2]    In the Johnson case, however, defendant merely stated "that it reassigned plaintiff simply because of a desire to reorganize and restructure its personnel", and the court held that this explanation, without more, is "not sufficiently clear and reasonably specific" to be the basis for a summary judgment ruling in defendant's favor.   Johnson, 76 F. Supp. 2d at 587.  Here, as set forth above and in the Award, Capgemini specifically described an economically motivated

Arentowicz argues that the Panel erred and that Capgemini failed to satisfy its burden of production "in two respects" (Arentowicz Br. 3).   First, Arentowicz argues that Capgemini failed to satisfy its burden of "coming forward with evidence sufficient to support its articulated reason for terminating Arentowicz", "effectively remaining silent in the face of this obligation" (Arentowicz Br. 3-4).   Arentowicz misstates the standard; all Capgemini must do to satisfy its burden of production is to provide admissible evidence of its reason for terminating Arentowicz, not assume the ultimate burden of proof on the case, and Capgemini clearly met its burden of production (see Section 1, infra).   Second, Arentowicz argues that he was not given an opportunity to prove as Capgemini's reason  because Capgemini "withheld this information", i.e., the "pipeline" documents.     This argument does not meet the "manifest disregard of the law" standard and is in any event untrue.  (See Section b, infra).

1.    Capgemini Provided Evidence Of A Legitimate, Nondiscriminatory Reason For Termination.

Capgemini satisfied the standard under Burdine and Johnson by introducing admissible evidence demonstrating that Arentowicz was terminated in a reduction in force. Capgemini certainly did not remain silent.

First of all, this burden is satisfied by Wilson's testimony at the Hearing, in and of itself.   Wilson testified that senior management began discussing with him the necessity of a reduction in force in the Fall of 2002.  Wilson testified that Capgemini was losing "hundreds of millions of dollars" and "we shifted pretty dramatically towards trying to move to a survival mode and our issue was, for the next four or five months, who we needed to keep".  (Tr. 415-16). Wilson testified that "if there was not adequate revenue to be delivered by April or May [of

reduction in force and cost cutting plan as its explanation for terminating Arentowicz's employment, which clearly satisfies its burden.  Id.

15

2003] to support a V.P. . . . we would ask that person to leave . . . unless we couldn't figure out how to live without that person in terms of some specialized skill they might have" (Tr. 416-17). Wilson testified that he needed to lay off four vice presidents (Tr. 451), and included Arentowicz because it did not appear as though he would be bringing in significant revenue, that "Merck had dried up as an account" and included Arentowicz for the "RIF" (Tr. 424-25). Wilson testified that, at the termination meeting, he explained this to Arentowicz:

> I said to him that I felt that he needed to be, we were going to let him go. I felt terrible about it.
>
> I did not, this is not the kind of thing that anyone likes to do, especially someone who has been a long-standing vice president of Capgemini and, more importantly, a long-standing partner with Ernst & Young.
>
> But that we were in a position where the company is losing money dramatically, and we are in a survival mode only and we are looking for people who could, the only people that were going to stay are those people producing current revenue now.
>
> And Merck had dried up in a significant way, and we were asking him to leave. Chuck, I think, had a document with him that had some information about his sales and utilization in the prior year, and I just said, Chuck, that is not what this is about.
>
> This is about the next few months our revenue and sales, this is an RIF.

(Tr. 458).

Further, documentary evidence establishes that Arentowicz was terminated as part of a reduction in force and Arentowicz was made well aware of this fact. Capgemini's termination letter to Arentowicz dated December 11, 2002 states that "this letter serves as formal notification of your termination of your employment with Cap Gemini Ernst & Young U.S. LLC as part of a reduction-in-force". (CG Ex. 27 (emphasis added)). Moreover, Arentowicz states in his original Complaint dated October 24, 2003 that "on December 11, 2002, without any prior warning, Cap Gemini selected Arentowicz for termination in an alleged reduction in force." (CG

Ex. 40 (Silver Aff. Ex. 2)).[3]  Thus, Arentowicz's statement that Capgemini refused to provide a valid explanation for his termination is incorrect.

Further, even Arbitrator Malty, in his dissenting opinion, does not claim that the Panel failed to apply <u>McDonnell Douglas</u>, or that Capgemini failed to provide a legitimate, nondiscriminatory reason for its employment decision.  To the contrary, Arbitrator Maltby explicitly states up front: "<u>Both parties have met their burden of production</u>" (Award at Dissenting Opinion p. 1).  In his Dissenting Opinion, Arbitrator Maltby merely states that, based on the evidence, he "would decide this case differently".   This certainly does not constitute manifest disregard of the law.  <u>See, e.g.</u>, <u>Acciardo</u>, 83 F. Supp. 2d at 417 (court not empowered to second guess the arbitrators' fact-finding or assessment of credibility).

      2.   <u>Arentowicz Was Not And Cannot Claim He Was Deprived Of Pipeline Documents</u>.

As set forth above, Arentowicz argues that Capgemini's alleged failure to locate or produce the pipeline documents setting forth his projected revenue for 2003 somehow means that Capgemini failed to satisfy its burden of production of a legitimate, nondiscriminatory reason for his termination.  This is incorrect.  As set forth above, Capgemini need only explain its reason for termination to satisfy this burden, and need not produce every piece of evidence ever created on this point.  <u>Burdine</u>, 450 U.S. at 260, 101 S. Ct. at 1095; <u>see</u> <u>Johnson</u>, 76 F. Supp. 2d at 586 (employer's burden satisfied by setting forth "specific rationale" for its reduction in force).  As set forth above, Capgemini produced evidence regarding its reasons for termination,

---

[3]    The Panel correctly found that Arentowicz's reliance on the "business case" prepared by Human Resources personnel (Kane-Stanley) was irrelevant, as it was accurate at the time it was drafted and, in any event, "played no role in [Wilson's] decision to lay off Arentowicz" (Award p. 5).

including but not limited to Wilson's credible testimony, and for this reason alone Arentowicz's argument on this point fails.

Further, Arentowicz never raised this argument in the arbitration. Rather, he argued that the purported failure to locate or produce these documents, combined with his interpretation of the documents both parties did produce pertaining to revenues and projected revenues, evidenced pretext. (See Arentowicz Post-Hearing Brief (McMoran Ex. D) at p. 71). Hence, the Panel could hardly be found to have disregarded the law when Arentowicz never raised this argument during the arbitration.

Moreover, and perhaps most significantly, Capgemini, after an exhaustive search, did in fact produce the pipeline information, but Arentowicz tellingly moved to exclude the documents because they were produced a week or so before the Hearing (Tr. 432-33). The circumstances are as follows.

Wilson left Capgemini in January 2003. Kane-Stanley, the HR person primarily involved in the subject RIF, left in June 2003. Neither took any documents with them. Arentowicz did not serve his Complaint until November 2003, approximately eleven months after his termination. Hence, there was no reason prior to that time for Capgemini to attempt to preserve documents.[4]

As attested to at the Hearing, Capgemini thereafter made every effort to find someone else who may still have the pipeline documents or information from 2002, but the documents could not be located. Nevertheless, Capgemini's counsel, after discussing the matter

---

[4]    Arentowicz's reliance on an purported claim letter he allegedly sent to Capgemini in May 2003 is improper, as that letter was excluded from evidence at the Hearing because it was never produced (Tr. 265-67), and Arentowicz's reference to that letter should not be considered by the Court.

with person after person after person, was finally able to locate someone who happened to keep pipeline documents from January 2003 (Tr. 434-35).  These documents contained information specifically regarding Arentowicz's projected revenue (Tr. 435, 443), and Capgemini produced such documents several weeks before the Hearing (Tr. 434-438), but Arentowicz then moved to exclude the very information he now accuses Capgemini of not producing because the production was late (Tr. 432-33).   The Panel granted this motion but ruled that the pipeline information could be reviewed by Wilson during the Hearing for purposes of establishing that this was the type of information Wilson relied on, and Wilson testified that it was (Tr. 442-43).

Having made the tactical decision to move to exclude this evidence, rather than use it to attempt to support his case, Arentowicz cannot now claim that he was denied that evidence.  Arentowicz, to remedy any alleged harm by a "late" production, could have moved to reopen discovery, could have asked for a continuance, or explored a number of different avenues, but Arentowicz instead chose to seek to exclude the evidence.  He cannot now claim prejudice as a result.   In any event, no improper motive, let alone age discrimination, can be attributed to any of this.  See Harding v. Careerbuilder, 168 Fed. Appx. 535, 539 (3d Cir. 2006) (mere "lapses in the employer's record-keeping cannot on its own establish a pretext claim"); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995) ("[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for").

In addition, Arentowicz himself had access to the pipeline documents and he himself failed to produce them.  In particular, Arentowicz admitted that he provided the information on the pipeline documents and had rights to those documents during his employment

(Tr. 204-07).    As was made clear from Arentowicz's document production, he took the documents relating to his performance with him when he left Capgemini (see e.g., R. 6, 7, 8, 21). Moreover, even after he was terminated, Arentowicz continued to obtain documents from friends at Capgemini (Tr. 241-42).

Further, Capgemini did in fact produce evidence and testimony relating to Arentowicz's declining revenue as Account Executive for Merck, and that even this revenue included revenues for a supply chain project sold and run by another vice president (CG Ex. 13 at p. 2; Tr. 279), and that Arentowicz was working only 3 billable hours per week (Tr. 226; R. 5 at CG 66).

<u>Conclusion</u>

Based on the foregoing, Capgemini respectfully requests that the Court: (i) deny Arentowicz's request for an order vacating the Final Award; (ii) confirm the Final Award; (iii) dismiss this action with prejudice; (iv) award Capgemini its costs as allowable by law; and (v) award such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 25, 2007

                                        WINSTON & STRAWN LLP


                                        By: <u>s/Gerald D. Silver</u>
                                            Gerald D. Silver
                                            200 Park Avenue
                                            New York, NY  10166
                                            (T) (212) 294-6627
                                            (F) (212) 294-4700

                                        Attorneys for Respondent
                                            Capgemini U.S. LLC