UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
CHARLES ARENTOWICZ,                    :    07 Civ. 6092 (LAP)
:
      Petitioner,                              :    ECF Case
:
  - against -                                    :
:
CAP GEMINI ERNST & YOUNG U.S.,LLC,     :
:
      Respondents.                             :
:
----------------------------------------------------------------x


**PETITIONER'S MEMORANDUM OF LAW IN FURTHER SUPPORT
OF HIS MOTION TO VACATE THE ARBITRATION AWARD AND IN OPPOSITION
TO CAPGEMINI'S CROSS-MOTION TO CONFIRM THE AWARD**


McMORAN, O'CONNOR & BRAMLEY, P.C.
Ramshorn Executive Centre
Building D, Suite D-1
2399 Highway 34
Manasquan, New Jersey 08736
(732) 223-7711
Attorneys for Charles Arentowicz

On the Brief:

Bruce P. McMoran, Esq.
Douglas S. Bramley, Esq.

# TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL ARGUMENT

POINT I

THE ARBITRATORS MANIFESTLY DISREGARDED CGE&Y'S FAILURE TO SATISFY ITS BURDEN OF PRODUCTION ..................................................................................................... 3

   A.  CGE&Y Improperly Frames The Reason For Termination ................................................................................................. 3

   B.  CGE&Y Failed To Introduce Admissible Evidence Showing Why Arentowicz Was Selected For Termination ................................................................................................. 4

   C.  Arentowicz Was Deprived Of Pipeline Documents ........................................... 8

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Hoeft v. MVL Group, Inc.*, 343 F.3d 57 .................................................................................1

*Kapossy v. McGraw-Hill, Inc.*, 921 F.Supp. 234 .....................................................................4

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 .................................................................1

*Reeves v. Sanderson Plumbing Prod. Inc.*,
    530 U.S. 133 .......................................................................................................................10

*Seasonwein v. First Montauk Securities Corp.*,
    189 Fed.Appx. 106, 110-11 ...................................................................................................4

*Texas Department of Committee Affairs v. Burdine*,
    450 U.S. 248 ...............................................................................................................2, 4, 5, 7

## STATE CASES

*Baker v. National State Bank*, 312 N.J.Super. 268 ..................................................................4

*Jerista v. Murray*, 185 N.J. 175 .............................................................................................10

*Murray v. Newark Housing Authority*,
    311 N.J.Super. 163 ...............................................................................................................8

# PRELIMINARY STATEMENT[1]

Capgemini U.S. LLC ("CGE&Y") does not dispute the following key elements of Petitioner Charles Arentowicz's ("Arentowicz") motion to vacate the arbitration award:

(a) An arbitration award may be vacated if "(1) the arbitrator[s] knew of a governing legal principle yet refused to apply it or ignored it altogether; and (2) the law ignored by the arbitrator[s] was well defined, explicit, and clearly applicable to the case." Hoeft v. MVL Group, Inc., 343 F.3d 57, 64 (2d Cir.2003). CGE&Y Br. at p. 8-10.

(b) Arentowicz satisfies the second prong of the "manifest disregard" test because the burden shifting methodology set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1993)[2] is well defined, explicit and clearly applicable to this case. CGE&Y Br. at p. 1 (referring to McDonnell Douglas as "well-known"); CGE&Y Br. at p. 10-12 (the Arbitrators applied McDonnell Douglas).

(c) Arentowicz satisfies the first half of the first prong of the "manifest disregard" test, i.e., the arbitrators knew of a governing legal principle, because CGE&Y concedes that the Panel knew of and applied the McDonnell Douglas burden shifting analysis. CGE&Y Br. at p. 10-12 (Arbitrators applied McDonnell Douglas); CGE&Y Br. at p. 12 (Panel applied McDonnell Douglas).

Therefore, the only disputed issue before the Court is whether under the first prong of the "manifest disregard" test the Panel failed to properly apply the McDonnell-

---

[1] "CGE&Y Br." refers to the Memorandum of Law in Opposition to Arentowicz's Motion to Vacate the Arbitration Award and in Support of Capgemini's Cross-Motion to Confirm the Award.

[2] Under McDonnell Douglas, the plaintiff has the burden of proving a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. Once the plaintiff makes this showing, a mandatory presumption of discrimination is created. Id. If the plaintiff succeeds in proving the *prima facie* case, the burden of production shifts to the defendant to rebut the presumption of discrimination by introducing evidence supporting a legitimate, nondiscriminatory reason for its actions. Id. Third, should the employer carry this burden, the plaintiff then has an opportunity to prove that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. Id., at 804.

1

Douglas burden shifting analysis. In particular, the Court must determine whether the Panel failed to follow step-two of McDonnell-Douglas, as affirmed in Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981), under which CGE&Y has the burden of setting forth, through the introduction of admissible evidence, the nondiscriminatory reason(s) articulated for its actions. Burdine, 450 U.S. at 255. Here, that determination turns on whether: (a) CGE&Y can carry its burden under step-two simply by articulating a termination reason for which there is no evidentiary support, as CGE&Y argues; or (b) whether CGE&Y has the burden of coming forward with admissible evidence supporting the alleged reason for Arentowicz's firing.

For the reasons set forth in Arentowicz's Memorandum of Law in Support of the Motion to Vacate, and below, CGE&Y's burden of production under step-two of McDonnell Douglas requires more than simply expressing an argument as to why Arentowicz was terminated. To satisfy its burden of production, CGE&Y was required to introduce admissible evidence supporting the reason for the termination sufficient to give Arentowicz a full and fair opportunity to demonstrate under the third-step of McDonnell Douglas that CGE&Y's articulated reason was a prextet. Burdine, 450 U.S. at 255-56. By withholding the only documents in existence from which Arentowicz could have shown that the alleged reason for his termination was false, i.e., the sales pipeline documents, CGE&Y deprived Arentowicz of a fair opportunity to pierce the proffered reasons with facts of record. As such, CGE&Y failed to satisfy its burden of production under step-two of McDonnell Douglas and the Panel should have entered judgment for Arentowicz as a matter of law. Burdine, 450 U.S. at 254.

# LEGAL ARGUMENT

## POINT I

### THE ARBITRATORS MANIFESTLY DISREGARDED CGE&Y'S FAILURE TO SATISFY ITS BURDEN OF PRODUCTION

**A.  CGE&Y Improperly Frames The Reason For Termination**

CGE&Y mischaracterizes its burden of production under step-two of <u>McDonnell Douglas</u> by incorrectly framing the articulated reason(s) for Arentowicz's termination. CGE&Y alleges in its opposition brief that its stated reason for Arentowicz's termination was a reduction-in-force; that it "satisfied the standard under <u>Burdine</u>" by introducing admissible evidence showing that Arentowicz was terminated in a reduction-in-force; and that it was Arentowicz's burden under step-three of <u>McDonnell Douglas</u> to show that the reduction-in-force was not the real reason for his termination. CGE&Y Br. at p. 12, 15. The fact is, Arentowicz did not dispute that he was terminated in a reduction-in-force, or that the reduction-in-force was legitimate and necessary. The sole issue at the hearing was whether age played an impermissible part in CGE&Y's <u>selection</u> of Arentowicz for termination in the reduction-in-force. <u>Id</u>. As the Panel stated in its Final Award:

> The parties do not dispute that: Cap Gemini's financial crisis was real; the RIF was business related; the company was entitled to set the ground rules for the RIF, and; elimination of four vice president positions in the Life Sciences Department was warranted.

McMoran Cert., Ex. H, at p. 3.[3]

Arbitrator Maltby, in his dissenting opinion, also noted:

> The parties agree that the reduction in force was not a pretext for discrimination, but was brought about by adverse business conditions. Nor is it disputed that Cap Gemini was extremely concerned with short-term revenue, and that this criteria played a significant role in determining

---

[3] "McMoran Cert." refers to the Certification of Bruce P. McMoran, Esq. previously submitted by Arentowicz in support of the motion to vacate the arbitration award.

3

which employees to terminate. The issue is whether age played an impermissible part in this process.

McMoran Cert., Ex. I, at p. 1.

The New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1, *et seq.*, prohibits an employer from selecting an employee for termination because of age even where discharge occurs in context of a reduction-in-force. See e.g., Baker v. National State Bank, 312 N.J. Super. 268, 289 (App.Div.1998) aff'd 161 N.J. 220 (1999). A workforce reduction is not in and of itself a legitimate, nondiscriminatory reason to terminate an employee since it does not give an employer carte-blanche to select employees for termination because of their age. Baker, 312 N.J. Super. at 289; Kapossy v. McGraw-Hill, Inc., 921 F.Supp. 234, 244 (D.N.J. 1996) (workforce reduction motivated by discriminatory animus is unlawful). Thus, CGE&Y did not satisfy its burden simply by alleging that Arentowicz was terminated in a reduction-in-force.

To satisfy its burden under step-two of McDonnell Douglas in the context of a reduction-in-force, CGE&Y was required to introduce admissible evidence showing the legitimate, nondiscriminatory reason why Arentowicz, as opposed to younger Vice Presidents, was <u>selected</u> for termination in the reduction-in-force. Burdine, 450 U.S. at 255; Seasonwein v. First Montauk Securities Corp., 189 Fed.Appx. 106, 110-11 (3d Cir.2006) (employer's failure to provide explanation of how it selected workers in reduction-in-force raised issue of fact sufficient to preclude summary judgment on age claim). CGE&Y failed to introduce any such evidence at the arbitration hearing.

### B. CGE&Y Failed To Introduce Admissible Evidence Showing Why Arentowicz Was Selected For Termination

CGE&Y alleged that Arentowicz was selected for termination in the reduction-in-force because he did not have "immediate revenue generation or sales opportunities" in

4

2002 and/or 2003. McMoran Cert., Ex. C, Tr.290:19-291:2. CGE&Y made this allegation through the argument of counsel, which did not satisfy CGE&Y's burden of production, Burdine, 450 U.S. at 256, n.9, and the testimony of David Wilson, the alleged decisionmaker. However, Wilson admitted that he never reviewed Arentowicz's sales or revenue targets for 2002, was not aware if Arentowicz met those targets, and did not know Arentowicz's sales projections for 2003. Id., at Tr.345:2-346:17, Tr.384:10-20.

To satisfy its burden under step-two of McDonnell Douglas, CGE&Y was required to do more than simply have Wilson make the bald assertion that "it did not appear as through [Arentowicz] would be bringing in significant revenue," CGE&Y Br. at p.16, an assertion of which Wilson admittedly had no personal knowledge. Indeed, in Burdine, the Supreme Court rejected outright the notion that an employer could carry its burden by articulating reasons that are "not admitted into evidence." Burdine, 450 U.S. at 256, n.9. Under Burdine, CGE&Y was required to have: (a) set forth, through the introduction of admissible evidence, the reason Arentowicz was fired; and (b) to have presented such evidence "with sufficient clarity and detail" to afford Arentowicz a fair opportunity to demonstrate under the third step of McDonnell Douglas that the articulated reason for his firing is a pretext for discrimination, Burdine, 450 U.S. at 258. In this case, that meant CGE&Y had to introduce at least some evidence into the record, e.g., documents, oral testimony, etc., of the sales/revenue numbers it allegedly relied upon in selecting Arentowicz for termination over younger Vice Presidents.

At the arbitration hearing, CGE&Y utterly failed to introduce any evidence, let alone admissible evidence, of Arentowicz's projected sales and/or revenue.

- CGE&Y did not produce a single document showing: (a) the reason for Arentowicz's termination; (b) the comparative analysis Wilson allegedly performed in

5

comparing Arentowicz's sales numbers to those of younger Vice Presidents; or (c) Arentowicz's projected sales and/or revenue for 2003.

- Not one CGE&Y witness offered any testimony at the arbitration hearing disputing Arentowicz's sales through September 2002 ($7.3 million) or his 2003 sales projection of $9.5 million at Merck.

- Not one CGE&Y witness had knowledge of Arentowicz's revenue and/or sales projections in 2003, including Wilson (see above) and Laurie Jadick, who testified that she had no knowledge of the sales and/or revenue Arentowicz was expected to generate in 2002 and/or 2003. McMoran Cert., Ex. C, Tr.303:22-304:5.

Most importantly, CGE&Y did not produce the one and only document, i.e., the sales pipeline documents, from which Arentowicz could have shown that he was on pace to generate $9.5 million in sales at Merck in 2003, which more than doubled the amount CGE&Y claimed it expected a Vice President to generate to be safe from termination, i.e., $3 to $5 million. Indeed, the Panel specifically rejected Arentowicz's age claim because of the absence of this material:

> Perhaps most significantly, Arentowicz failed to provide specific and convincing evidence on the key question at hand, the likelihood that he personally would produce or sell immediate revenue in the months following the RIF, which severely undercut his case.

McMoran Cert., Ex. H, at p. 3.

The Panel failed to recognize that Arentowicz was not able to provide more specific evidence of his immediate revenue because the only such evidence in existence was the pipeline information, which was in the possession of CGE&Y and was being withheld. Arbitrator Maltby stated it best in his dissenting opinion:

> [CGE&Y's] articulated non-discriminatory reason for the termination is that Arentowicz's projected revenue was not sufficient. It argued that vice

6

presidents needed to have projected revenue of $3 to $5 million to retain their jobs and that the projected revenue of Arentowicz's account were below this figure . . . **[CGE&Y] submitted virtually no evidence to support this position.** It could have introduced the revenue projections (called "pipeline documents") for Arentowicz and the other vice presidents. It is undisputed that these documents existed. [CGE&Y] has not produced these documents, nor has it given an adequate explanation for their absence.

. . . . . . . . . . . . . . .

In the absence of the pipeline documents themselves, [CGE&Y] could have provided oral testimony regarding its revenue projections, especially the projection for Arentowicz, and explained why it was more realistic than Arentowicz's own projection . . . **[CGE&Y] did not provide this evidence either**.

. . . . . . . . . . . . . . .

It is true that Wilson testified at length regarding the process by which he claims the termination decisions were reached. None of this testimony, however, indicates that Wilson had any source of information about the revenue Arentowicz would generate other than the Arentowicz/Gray projection and Merck's past business with [CGE&Y], both of which indicated that Arentowicz would produce enough revenue to be retained.

McMoran Cert., Ex. I, p. 5-6.

The Supreme Court in Burdine emphasized that the sufficiency of an employer's evidence under step two of McDonnell Douglas must be evaluated by the extent to which it can fairly be said to have given the plaintiff-employee a fair opportunity to pierce the employer's proffered reason(s) with facts in the record. Burdine, 450 U.S. at 255-56. CGE&Y scorned Burdine and challenged Arentowicz to prove his discrimination claim relying entirely on the limited information he was able to coble together after his sudden and unexpected termination. Of course, the critical sales pipeline information that would have proved (or disproved) CGE&Y's alleged termination reason was in the hands of the company at all times. CGE&Y refused to produce the pipeline information, or any other evidence of Arentowicz's sales/revenue numbers, as part of a concerted effort to deprive

7

Arentowicz of any evidence from which he could have shown that CGE&Y's articulated reason for the termination was a pretext. This was a consistent tactic by CGE&Y. The company refused to set forth the reason for Arentowicz's termination in response to Interrogatory No. 6. Arentowicz Ex. R-12. Twenty-six (26) months after Arentowicz was fired, CGE&Y finally produced a document which purportedly revealed the alleged termination reason. Arentowicz Ex. R-13. One year later, CGE&Y admitted the termination reason was entirely false. Arentowicz Ex. R-9, Wilson Dep., T54:18-6.

CGE&Y's total lack of proof on the issue of Arentowicz's sales/revenue numbers has no more significance than if it had remained completely silent in the face of its burden of production. Murray v. Newark Housing Auth., 311 N.J. Super. 163, 176-77 (L.Div.1998). Indeed, Arentowicz could not prove false that which he did not have.

### C. Arentowicz Was Deprived Of Pipeline Documents

CGE&Y plays fast and loose with the record by alleging in its opposition brief that it "did in fact produce the pipeline information, but Arentowicz tellingly moved to exclude the documents." CGE&Y Br. at p. 18. CGE&Y fails to disclose to the Court: (a) the nature of the "pipeline information" it produced; and (b) why the Panel granted Arentowicz's motion to exclude the information.

David Wilson testified that the decision to terminate Arentowicz was made during a series of meetings with his executive team in August, September, and October 2002. Arentowicz Ex R-9, Wilson Dep., T39:5-40:6. It was during these meetings that Wilson reviewed the sales pipeline information upon which he allegedly relied in terminating Arentowicz. McMoran Cert., Ex. C, Tr.442:24-443:4. *A fortiori*, the "pipeline information" relevant to Arentowicz's age claim is the information Wilson had in his possession in August, September and October 2002.

On Monday, November 27, 2006, one (1) week before the arbitration hearing was set to begin, CGE&Y produced, for the first time, documents which purported to reflect the relevant sales pipeline information for Arentowicz. However, the pipeline information was from January 2003, the month after Arentowicz was notified of the termination decision, and at least three (3) months after the termination decision had been made.

CGE&Y's sales pipeline documents contain fluid sales and revenue information which is updated, modified, and changed on a daily basis. CGE&Y was unable to confirm at the hearing, either through oral testimony or other evidence, that the January 2003 pipeline documents contained the same information as the pipeline documents Wilson reviewed in August, September and October 2002. Indeed, CGE&Y could not confirm or deny whether the pipeline information had been changed or altered in any way between October 2002 and January 2003. Moreover, Wilson testified at the arbitration hearing that he had never seen the January 2003 pipeline documents. McMoran Cert., Ex. C, Tr.379:23-380:18. Therefore, the documents could not have been part of the decision-making process and were entirely unreliable. The Panel correctly recognized this fact and, upon motion by Arentowicz, excluded the documents as unreliable and outdated. Id., at Tr.432:20-442:22.

Arentowicz's counsel put CGE&Y on notice of his age claim on May 2, 2003, id., at Tr.T265:10-267:7, only five (5) months after his termination. In November 2003, three years (3) before the arbitration hearing, Arentowicz served a Request for Production of Documents on CGE&Y specifically requesting the production of all documents relating to the reason(s) CGE&Y selected him for termination. This request necessarily included the pipeline information Wilson allegedly relied upon in terminating Arentowicz. Despite

having full knowledge of the request for over three (3) years CGE&Y <u>never</u> <u>produced</u>, or offered to produce, the sales pipeline information from August to October 2002.[4]

CGE&Y's attempted introduction in December 2006 of the pipeline information from January 2003 confirms that CGE&Y maintained old pipeline information and that such information was therefore available for the relevant time period, i.e., August to October 2002. Indeed, the existence of the January 2003 sales numbers undercuts any claim by CGE&Y that its failure to produce pipeline information from August to October 2002 was merely the result of a lapse in record-keeping. It suggests that CGE&Y concealed and/or destroyed the information because it was not favorable. <u>See</u> <u>e.g.</u>, <u>Jerista v. Murray</u>, 185 N.J. 175, 202 (2005) (spoliation of evidence permits factfinder to infer that the evidence destroyed would not have been favorable to the spoliator).

## CONCLUSION

CGE&Y failed to meet its burden under step-two of <u>McDonnell Douglas</u>. It simply did not introduce <u>any</u> evidence of the reason Arentowicz was terminated. As a result, the presumption of discrimination that arose upon Arentowicz's *prima facie* case remained unrebutted and the Panel should have rendered judgment in Arentowicz's favor as a matter of law. <u>Reeves v. Sanderson Plumbing Prod. Inc.</u>, 530 U.S. 133, 147 (2000). The Panel manifestly disregarded the law by failing to do so. Accordingly, the award should be vacated and remanded to the Panel with instructions to: (a) find in favor of Arentowicz on his NJLAD claim as a matter of law; and (b) determine damages.

---

[4] CGE&Y's allegation that "Arentowicz himself has access to the pipeline documents" is entirely false and unsupported by any evidence in the record. CGE&Y Br., at p.19. Not a single witness testified that Arentowicz had access to the pipeline documents. Arentowicz introduced into evidence at the hearing the only sales/revenue documents he had upon his termination, which confirmed that he was on pace for $10 million in sales for 2002 (with $7.3 in sales already closed through September 2002) and had $9.5 in sales in the pipeline for 2003. Arentowicz Ex. R-2, R-5, R-6.

        Respectfully submitted,

        McMORAN, O'CONNOR & BRAMLEY, P.C.
        Attorneys for Petitioner, Charles Arentowicz


        By: <u>s/ Bruce P. McMoran</u>
            BRUCE P. McMORAN (BM1809)


Dated:   October 2, 2007